UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM YEAGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WBUR 90.9 BOSTON NPR PUBLIC RADIO )<br>and NPR NATIONAL PUBLIC RADIO, )<br>)<br>Defendants. )<br>) | Case No. 20-30028-KAR |

ORDER ON PLAINTIFF'S MOTIONS FOR LEAVE
TO PROCEED *IN FORMA PAUPERIS* AND FILE ELECTRONICALLY
AND REPORT AND RECOMMENDATION PURSUANT TO SCREENING OF THE
COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)

ROBERTSON, U.S.M.J.

I.   Introduction

*Pro se* litigant William "Billy" Yeager ("Plaintiff") has filed a 72-page complaint against National Public Radio ("NPR") and one of its local affiliates, WBUR. 90.9 Boston NPR Public Radio ("WBUR") (collectively, "Defendants") in which he claims that Defendants defamed him in news reports concerning the sale of a record in 2017. Summonses have not issued pending the court's review of Plaintiff's motion for leave to proceed *in forma pauperis* and a preliminary review of the complaint under 28 U.S.C. § 1915(e)(2)(B).

For the reasons stated below, the court will grant the motion for leave to proceed *in forma pauperis*, conditionally grant Plaintiff's motion to file electronically, order that the case be reassigned and recommend that the District Judge to whom the case is assigned dismiss it with prejudice for failure to state a claim upon which relief may be granted.

II.        Motion for Leave to Proceed *in Forma Pauperis*

Upon review of Plaintiff's motion for leave to proceed *in forma pauperis*, the court concludes that he has adequately demonstrated that he is unable to pay the filing fee. Accordingly, the motion is GRANTED.

III.       Review of the Complaint

    A.        Court's Authority to Review the Complaint

Because Plaintiff is proceeding *in forma pauperis*, the complaint is subject to a preliminary screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). In conducting this review, the court liberally construes Plaintiff's complaint because he is proceeding *pro se*.

    B.        Factual Allegations and Causes of Action

For purposes of this review of Plaintiff's complaint, the court assumes the veracity of all well-pled allegations.

Plaintiff is a "songwriter/musician, independent filmmaker, humanitarian and media activist" (Compl. ¶ 6). In January 2017, a test pressing of a record album called *301 Jackson St.* (recorded by [Plaintiff] in 1989) was sold on Discogs (a website to buy and sell vinyl records) becoming the most expensive record sold on this website" (Compl. ¶ 8). On March 22, 2017 "Discogs sent a press release to NPR to share the news about the sale of the album. The following day, on March 23, at 4 am in the morning, Discogs cancelled the transaction because they believed it to be fraudulent" (Compl. ¶ 9).

Within the next two days, NPR published a news article and broadcasted a news report concerning the cancelled transaction. Both publications accused Plaintiff of buying his own record on Discogs to generate publicity and included false and unfavorable descriptions of Plaintiff's musicianship and personal characteristics. Overall, they "described [Plaintiff] as a corrupt individual that had attempted to perpetrate a fraudulent sale because of his 'hunger for fame, or infamy'" (Compl. ¶ 21).

Plaintiff identifies the following five allegedly defamatory statements in the NPR publications:

1. This is the story of a hoax that almost was. Its motivating force was a hunger for fame, or infamy, or whispered legend in a particularly American sort of way.
2. The lightning-fast turnaround on this record-breaking sale, however, seems to have been a fiction woven by the record's creator.
3. Now, it seems clear that Yeager has attempted to perpetrate another hoax: He is, it seems, the seller who posted 301 Jackson St. on Discogs. He's also likely the buyer. Which means that $18,000 never changed hands and also raises the possibility that the test pressing of 301 Jackson St. does not exist at all.
4. Everything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it. But to what end? Likely the one you're reading.
5. What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince-more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with.

(Compl. ¶ 191). Plaintiff characterizes these statements as "'statements of fact couched as an opinion,' which assert a matter of objective fact that can be proved true or false" (Compl. ¶ 195).

Plaintiff also characterizes the following three statements as false and defamatory:

6. This guy, as good as he might possibly be, is far more interested in infamy than he is in fame and the chase of pulling the wool over people's eyes. He's a huckster. He's a charlatan.
7. Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist.
8. The story of Billy Yeager is one of purposeless obfuscation.

(Compl. ¶¶ 202, 204, 206). Defendants acted "negligently and with actual malice when publishing [them]" (Compl. ¶¶ 203, 205, 207).

Finally, Plaintiff states that he is bringing a "false light privacy action," (Compl. ¶ 212), and he provides five "[s]amples of statements which portrayed him in a false or misleading light (Compl. ¶ 219).

> 1.  The album, called 301 Jackson St., was recorded by Billy Yeager, a Florida man who has pursued musical fame (or at least notoriety) for 37 years, by his own account.
>
> 2.  ln 1990, the story goes, Hornsby heard a demo tape of Yeager's, liked what he heard and connected Yeager with Capitol Records, who gave Yeager a shot. It was the closest he would come to fame, but it cemented in Yeager's mind what he'd thought for some time: that he was destined for, perhaps owed, greatness.
>
> 3.  Eventually, Yeager began experimenting with the web and the infinite possibilities it offers, to those with ample time on their hands, for invention, obfuscation and, most importantly, self-mythology.
>
> 4.  Instead, Yeager created a murkier – possibly entirely fictional – network of identities with the purpose of propping himself up, like stilts under a sun-worn beach house. This network appears to be composed of publicists, managers, film producers and retailers of Yeager memorabilia – or what normal folks call items of sentimental value.
>
> 5.  Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist. What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince – more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with.

(Compl. ¶ 219).

      C.      Claims Raised in Earlier Action[1]

This is the third time Plaintiff has brought suit against NPR for its March 2017 publication of an article and radio commentary concerning Plaintiff. In March 2018, Plaintiff filed a diversity action in the United States District Court for the District of Kansas against NPR and its employees, asserting five causes of action for defamation and slander. The defendants responded by filing a motion to dismiss for failure to state a claim upon which relief could be granted. On July 18, 2018, the court issued a memorandum and order on the defendants' motion in which it separately addressed the sufficiency of each of the fifteen statements that Plaintiff claimed were defamatory. The court found that "the alleged defamatory statements are largely unverifiable opinions or opinions based (correctly or incorrectly) upon disclosed non-defamatory facts and, therefore, do not supply a plausible basis for cause of action." *Yeager v. NPR*, Case No. 18-4019-SAC-GEB, 2018 WL 3633894, at *1 (D. Kan. July 31, 2018). The court gave Plaintiff three weeks to file an amended complaint which stated a claim upon which relief might be granted. The court notified Plaintiff that, if he failed to comply with this directive, the court would dismiss the case with prejudice for the reasons stated in the order. *See id.* at *11.

Plaintiff subsequently filed a 220-page amended complaint, which the court construed as a proposed amended complaint and a motion for leave to proceed on the amended complaint. *See Yeager v. Nat'l Public Radio*, Case No. 18-4019-SAC-GEB, 2018 WL 5884596, at *1 (D. Kan. Nov. 9, 2018). The court considered each of the seventeen allegedly defamatory statements – many of which were included in the original complaint – and concluded that they failed to state a claim for defamation. The court also found that Plaintiff had failed to state claims for false

---

[1] The court may and does take judicial notice of Plaintiff's previously filed cases. *See Law Offices of David Efron v. Matthews & Fullmer Law Firm*, 782 F.3d 46, 56 n.7 (1st Cir. 2015).

light or "outrage."  The court denied the motion to amend as futile because the proposed amended complaint failed to state a claim and granted the defendants' earlier motion to dismiss.  *See id.* at *10.

Plaintiff appealed to the Court of Appeals for the Tenth Circuit, which affirmed the dismissal.  *See Yeager v. Nat'l Public Radio*, 773 F. App'x 1030 (10th Cir. 2019).  The United States Supreme Court denied his subsequent petition for a writ of certiorari.  *See Yeager v. Nat'l Public Radio*, 140 S. Ct. 665 (2019).

On March 23, 2020, Plaintiff commenced an action in the United States District Court for the Western District of Arkansas also arising from NPR's March 2017 article and radio show concerning Plaintiff's possible involvement in Discog's cancellation of the sale of *301 Jackson St.  See Yeager v. KUAF 91.3 NPR Public Radio*, CASE NO. 5:20-CV-05054, 2020 WL 2449348, at *1 (W.D. Ark. May 12, 2020).  On May 12, 2020, the court issued an order in which it screened Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2).  The court recited eight allegedly defamatory statements made by the defendants and five statements that allegedly showed Plaintiff in a false light, *see id.* at *1-2, all of which are identical to the eight allegedly defamatory statements and five false light statements Plaintiff identified in the complaint before this Court.  Referring to Plaintiff's previous action in the District of Kansas, the court concluded that Plaintiff's claims for defamation were barred by res judicata.  *See id.* at *4-5.  The court also concluded that Plaintiff had failed to state a false light claim under Arkansas law and declined to recognize a cause of action for journalist malpractice in Arkansas.  *See id.* at *3.  The Eighth Circuit summarily affirmed the dismissal.  *See Yeager v. KUAF 91.3 NPR Public Radio*, Case No. 20-2198 (8th Cir. Jan. 13, 2021).

D.     Claim Preclusion Bars the Present Action[2]

Plaintiff fares no better in the District of Massachusetts than he did in the District of Kansas or the Western District of Arkansas. Plaintiff's false light claims do not provide a basis for relief because Massachusetts does not recognize a false light invasion of privacy claim. *See Amrak Prods. v. Morton*, 40 F.3d 69, 74 (1st Cir. 2005); *Dasey v. Anderson*, 304 F.3d 148, 154 (1st Cir. 2002).

Under the doctrine of claim preclusion, the dismissal of Plaintiff's defamation claims case in the District of Kansas bars Plaintiff's present defamation claims.[3] "[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594 (2020).[4] The doctrine "serves to avoid multiple suits on identical entitlements or obligations between the same parties.'" *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 357 (2016) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4402, p. 9 (2d ed. 2002)). "If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all

---

[2] Although claim preclusion is an affirmative defense, and Fed. R. Civ. P. 8(a) does not require a plaintiff to plead facts to avoid a potential affirmative defense, a complaint can be dismissed for failure to state a claim if the allegations therein show that relief is barred by an affirmative defense. *See Bock v. Jones*, 549 U.S. 199, 215 (2007); *Shah v. U.S.*, 540 F. App'x 91, 93 (3d Cir. 2013).

[3] Res judicata is "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594 (2020). "The first is issue preclusion (sometimes called collateral estoppel)." *Id.* "The second doctrine is claim preclusion (sometimes itself called res judicata)." *Id.*

[4] There may be some question as to which law of claim preclusion applies here: federal common law or Massachusetts law. The question makes no practical difference because the state and federal claim preclusion principles do not differ significantly. *See Smith v. Bayer Corp.*, 564 U.S. 299, 308 n.6 (2011).

7

grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees,* 140 S. Ct. at 1594 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  Lawsuits involve the "same claim . . . when they arise from the same transaction or involve a common nucleus of operative facts." *Id.* (internal citations and quotation marks omitted).  Here, all the elements of claim preclusion are met.

      1.    <u>Same Claim</u>

Plaintiff's complaints in District of Kansas and in this District advance the same claims. They both concern the March 23 and March 24, 2017 NPR article and radio show concerning Plaintiff's possible connection to the sale of *301 Jackson St.* on Discogs.

      2.    <u>Judgment on the Merits</u>

Plaintiff's claims in his Kansas suit were dismissed on the merits, whether in the court's initial order on the defendants' motion to dismiss ("MTD Order"), or in its order denying Plaintiff's motion for leave to file an amended complaint and dismissing the action ("MTA Order"), or in both orders.  The court in Kansas held that each of the eight defamation claims Plaintiff raises in this action failed to state a claim upon which relief could be granted:

    1.    This is the story of a hoax that almost was.  Its motivating force was a hunger for fame, or infamy, or whispered legend in a particularly American sort of way."

In its MTD Order the court held that this statement was an expression of opinion based on disclosed facts and that the description of Plaintiff's motivation was not verifiable.  *See* MTD Order at *7.  In the MTA Order, the court declined to change its earlier holding.  *See* MTA Order at *5.

    2.    The lightning-fast turnaround on this record-breaking sale, however, seems to have been a fiction woven by the record's creator.

In its MTA Order, the court stated that the analysis applied to Claim 1, above, also applied to this statement.  *See* MTA Order at *5.

3. Now, it seems clear that Yeager has attempted to perpetrate another hoax: He is, it seems, the seller who posted 301 Jackson St. on Discogs.  He's also likely the buyer. Which means that $18,000 never changed hands and also raises the possibility that the test pressing of 301 Jackson St. does not exist at all.

In its MTA Order, the court found that this claim was "an expression of opinion based upon disclosed facts" and that Plaintiff had not "allege[d] facts plausibly showing that the opinion that he bid upon his own album [was] defamatory or that defendants acted with actual malice."  *See* MTA Order at *5, 6.

4. Everything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it.  But to what end? Likely the one you're reading.

In its MTA Order, the court stated that the analysis applied to Claim 1, above, applied to this statement.  *See* MTA Order at *5.

5. What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince-more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with.

In its MTA Order, the court referred to its findings in the MTD Order and stated that its holding applied as well to this claim.  *See* MTA Order at *6.

6. This guy, as good as he might possibly be, is far more interested in infamy than he is in fame and the chase of pulling the wool over people's eyes.   He's a huckster. He's a charlatan.

In its MTD Order and MTA Order, the court stated that characterizing Plaintiff as a huckster or charlatan was not actionable.  *See* MTD Order at *7; MTA Order at *9.

7. Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist.

9

In its MTD Order, the court found that this was an opinion based upon nondefamatory facts.  *See* MTD at *10.  In the MTA Order, the court stated it would not alter its previous holding on this claim.  *See* MTD at *8.

8. The story of Billy Yeager is one of purposeless obfuscation.

In its MTD Order, the court found that the statement was a subjective opinion based upon disclosed facts.  *See* MTD Order at *10.  In its MTA Order, the court stated that Plaintiff had failed to show that the court's earlier finding on this statement was incorrect.  *See* MTA at *6.

### 3. Between the Same Parties

NPR is a named plaintiff in both lawsuits.  WBUR, its local affiliate in the instant action, was not a party to Plaintiff's action in the District of Kansas, but, for purposes of claim preclusion, they are the "same parties" because WBUR is "closely related" to or has a "close and significant relationship" to NPR.  *Airframe Systems, Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) (quoting *Negrón–Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008)).

Because the requirements of claim preclusion are met, Plaintiff is precluded from relitigating the defamation claims he asserted or attempted to assert in his action in Kansas; and raising issues that could have been raised and decided in his action in Kansas.  Accordingly, this court recommends that the complaint be dismissed with prejudice.

## IV. Conclusion

In accordance with the foregoing, the Court hereby orders:

1. The motion for leave to proceed *in forma pauperis* is GRANTED.

2. The motion to file electronically is GRANTED provided that Plaintiff fulfills any CM/ECF training and registration requirements.

3.      The undersigned recommends to the District Judge that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2) with prejudice for failure to state a claim upon which relief may be granted because (1) Massachusetts does not recognize a claim for false light invasion of privacy; and (2) Plaintiff's claims for defamation are barred under the doctrine of claim preclusion.[5]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: May 13, 2021

---

[5] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604-05 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).